IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 05-00424-03-CR-W-ODS |
| | ) | |
| RUSS B. COHEN, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

This matter is currently before the Court on defendant Cohen's Motion to Dismiss (doc.

#13). For the reasons set forth below, it is recommended that the motion be denied.

I. INTRODUCTION

A. The Indictment

On November 16, 2005, the Grand Jury returned a two count indictment against defendants

Timothy J. Muldoon, Tina D. Muldoon and Russell B. Cohen.[1] The indictment charges the

defendants with presenting false claims to the United States in violation of 18 U.S.C. §§ 287 and 2

(Count One) and 18 U.S.C. §§1001 and 2 (Count Two). Specifically, the indictment provides, in

part:

COUNT ONE

1. At all times material herein:

a. The defendant TIMOTHY J. MULDOON was the vice
president of M&M International Aerospace Metals, Inc., and owned 49% of the

---

[1]The case against defendants Timothy Muldoon and Tina Muldoon has been transferred
to the Southern District of Florida for plea and sentence.

corporation.

b.     The defendant TINA D. MULDOON was the president of M&M International Aerospace Metals, Inc., and owned 51% of the corporation.

c.     The defendant RUSSELL B. COHEN was the sales manager of M&M International Aerospace Metals, Inc.

d.     M&M International Aerospace Metals, Inc., hereafter M&M, located in Ft. Lauderdale, Florida, was a metal distributor to the aerospace industry. It was a subcontractor to Honeywell Federal Manufacturing and Technologies ...

e.     Honeywell Federal Manufacturing and Technologies, hereafter Honeywell, located in Kansas City, Missouri, is the managing and operating contractor of the Kansas City Plant, owned by the Department of Energy. The Kansas City Plaint manufactures non-nuclear mechanical, electronic, and engineered-material components for national defense systems for the United States.

2.     On or about March 6, 2003, Honeywell awarded firm fixed-price subcontract 40577, valued at $26,928, to M&M, based on low bid, to supply 136 feet of bars, per specification requirements set forth in the subcontract. The bars were to be used in nuclear-safety-critical applications, to build a cylinder, that is, the outer housing of an Environmental Sensing Device, used in the W87 Peacekeeper Nuclear Missile, an environmental safety subsystem that isolates the W87 missile from electrical energy, prevents electrical energy from going through the missile, and is designed to prevent inadvertent nuclear detonations.

3.     The contract required that M&M furnish to Honeywell metal bars cut into three-foot lengths, machined to specifications and tested to specifications, the testing to include chemical analysis, tensile properties, condition H1025-ultimate strength, yield strength, elongation, reduction of area, ultrasonic, micro inclusion, macro etch, surface discontinuities, and ferrite. The subcontract required that M&M provide to Honeywell the test results with the bars.

4.     On or about April 17, 2003, the defendants, acting on behalf of M&M, submitted to Honeywell 48 three-foot bars; included was only one set of test documents for one bar, showing tensile test, elongation, reduction in area, and chemistry testing. After inspecting and reviewing the bars, Honeywell rejected the order due to improper marking and incomplete testing; the bars were sent back to M&M, with instructions about the corrective action needed, in particular, that each of the 48 bars had to be tested.

5.     The defendants thereafter obtained quotes to test 12 bars but the defendants MULDOON did not like the quote. The defendants then obtained a quote

to test only one bar.

6. Between April 17, 2003, and May 27, 2003, the defendants created 60 fraudulent test documents reflecting that testing had been performed as required under the subcontract: 48 fraudulent test documents falsely reflecting that 48 bars had been tested by Dickson Testing Co., a testing subcontractor for M&M for destructive testing (including chemical analysis, tensile, and metallurgical evaluation), when in fact only one bar had been tested and one test document was provided by Dickson to the defendants; and twelve fraudulent test documents falsely reflecting that twelve bars had been tested by Stork Materials Testing and Inspection, a testing subcontractor for M&M for ultrasonic testing, as required under the subcontract, when in fact twelve bars were tested but not in the manner required by the subcontract, and only one test document was provided by Stork to the defendants.

7. On or about May 21, 2003, the defendant COHEN, knowing the representation was false, at the direction of the defendant TIMOTHY MULDOON sent an E-Mail to Honeywell advising that M&M had completed retesting all 48 bars for the subcontract and would mail a set of documents reflecting the testing as well as the set of test documents being shipped with the bars. A "Certificate of Conformance" was also provided, certifying that all material supplied under the contact met the applicable requirements.

8. On or about May 21, 2003, the defendants in the name of M&M resubmitted the bars to Honeywell, along with the 60 false and fraudulent documents purportedly reflecting the required test results. A "Certification of Conformance" was included, certifying that all material supplied under the contract met the applicable requirements.

9. On or about May 21, 2003, the defendants TIMOTHY MULDOON and TINA MULDOON submitted invoice #1636 in the amount of $28,512, requesting payment for M&M's services under the subcontract.

10. On or about May 27, 2003, Honeywell received, inspected, and accepted the order, based in part on test results and certification.

11. On or about July 2, 2003, Honeywell paid M&M's invoice by check in the amount of $28,512, which was deposited into M&M's bank account on or about July 9, 2003.

12. On or about October 8, 2003, Honeywell employees were reviewing the test documents submitted by M&M and noticed the test documents appeared identical for each of the 48 bars. Visual examination led Honeywell to suspect that a single test document from Dickson had been copied 48 times and the bar number falsified.

13.     Subsequent investigation determined that, at the defendants' request, Dickson tested one bar and issued one certified test document, which was provided to M&M.  The 48 individual test documents submitted to Honeywell by the defendants were fraudulent and the defendants did not request or have authorization from Dickson to alter, change, or add information on the authentic Dickson test document.

14.     Subsequent investigation also determined that Stork Materials Testing and Inspection ultrasonically tested twelve bars and created one test document, which was sent to M&M.  The 12 individual test documents submitted to Honeywell by the defendants were fraudulent and the defendants did not request or have authorization from Stork to alter, change, or add information to the authentic Stork test document.

15.     As a result of the fraud by the defendants, the United States sustained a loss of approximately $56,386.87, including labor by Honeywell, re-testing, and the cost of the unusable material.

16.     On or about June 4, 2003, as a result of the scheme to defraud set forth above, at Kansas City, in the Western District [of] Missouri, and elsewhere, the defendants TIMOTHY J. MULDOON, TINA D. MULDOON, and RUSSELL B. COHEN, knowingly made and presented, and caused to be made and presented, to Honeywell Federal Manufacturing and Technologies, the managing and operating contractor at the Kansas City Plant, a Department of Energy-owned facility, a claim against the United States for payment, which they knew to be materially false, fictitious and fraudulent, in that they prepared and caused to be prepared, and submitted and caused to be submitted, invoice #1636 for M&M International Aerospace Metals, Inc., in the amount of $28,512, when they knew M&M had not performed the testing required under the subcontract, that the test documents purportedly reflecting such testing were false and fraudulent, and that the "Certification of Conformance" was false.

All in violation of Title 18, United States Code, Sections 287 and 2.

## COUNT TWO

1.     The Grand Jury incorporates by reference paragraphs one through fifteen of Count One of the Indictment as if fully set forth herein.

2.     On or about May 21, 2003, in furtherance of and as a result of the scheme to defraud set forth in Count One of this Indictment, at Kansas City, in the Western District [of] Missouri, and elsewhere, the defendants TIMOTHY J. MULDOON, TINA D. MULDOON, and RUSSELL B. COHEN, in a matter within the jurisdiction of the Department of Energy, knowingly made and caused to be made

4

to Honeywell Federal Manufacturing and Technologies, the managing and operating contractor at the Kansas City Plant, false, fictitious, and fraudulent statements of material facts by preparing and causing to be prepared, and submitting to Honeywell, 60 false and fraudulent test documents and a false "Certification of Conformance," all in support of invoice #1636.

All in violation of Title 18, United States Code, Sections 1001 and 2.

B.      The Statutes

The statutes under which defendant Cohen is charged, 18 U.S.C. §§ 287, 1001 and 2, read

in part:

§ 287.  **False, fictitious or fraudulent claims**

Whoever makes or presents to any person or officer in the civil, military, or naval service of the United States, or to any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent, shall be imprisoned not more that five years and shall be subject to a fine in the amount provided in this title.

18 U.S.C. § 287.

§1001.  **Statements or entries generally**

(a)      Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative or judicial branch of the Government of the United States, knowingly and willfully–

(1)      falsifies, conceals, or covers up by any trick, scheme, or device a material fact;

(2)      makes any materially false, fictitious, or fraudulent statement or representation; or

(3)      makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;

shall be fined under this title, imprisoned not more than 5 years ... or both.

18 U.S.C. § 1001(a).

§ 2.  **Principals**

       (a)     Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

       (b)     Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

18 U.S.C. § 2.

C.      Standards For Evaluating A Motion To Dismiss

The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation ..."  This Constitutional requirement is implemented by Rule 7(c)(1) of the Federal Rules of Criminal Procedure which specifies "[t]he indictment or information must be a plain, concise and definite written statement of the essential facts constituting the offense charged ..."

An indictment is sufficient if it:  (1) contains the essential elements of the offenses charged; (2) fairly informs the defendant of the charges against which he must defend; and (3) enables the defendant to plead an acquittal or conviction in bar of future prosecution for the same offenses.  See Hamling v. United States, 418 U.S. 87, 117 (1974); United States v. O'Hagan, 139 F.3d 641, 651 (8th Cir. 1998); United States v. Wessels, 12 F.3d 746, 750 (8th Cit. 1993), cert. denied, 513 U.S. 831 (1994).  The sufficiency of a criminal indictment is determined from its face.  There is no summary judgment procedure in criminal cases nor do the rules provide for a pre-trial determination of the sufficiency of the evidence.  See United States v. Nabors, 45 F.3d 238, 240 (8th Cir. 1995); United States v. Critzer, 951 F.2d 306, 307 (11th Cir. 1992).  Indictments are normally sufficient unless no reasonable construction can be said to charge the offense.  See O'Hagan, 139 F.3d at 651.

6

In determining whether an indictment must be dismissed for failure to state an offense, the Court must look upon the allegations of the indictment as true.  See United States v. Sampson, 371 U.S. 75, 78-79 (1962)("Of course, none of these charges have been established by evidence, but at this stage of the proceedings the indictment must be tested by its sufficiency to charge an offense."); United States v. Cadillac Overall Supply Co., 568 F.2d 1078, 1082 (5th Cir.), cert. denied, 437 U.S. 903 (1978)("It must be remembered that in testing the sufficiency of an indictment ... the court must look to the allegations and, taking the allegations to be true, determine whether a criminal offense has been stated.")

## II.  DISCUSSION

Defendant Cohen argues that dismissal of the indictment is appropriate for three reasons.  First, defendant contends that he did not make or present a claim to the United States.  Second, defendant contends that because the alleged false information and invoice were submitted to Honeywell, he had no knowledge that the claim would be presented to the United States, which knowledge he claims is necessary under both sections 287 and 1001.  Third, defendant contends that the false statements were neither material nor relied upon by the government.

### A.      Presentation Of The Claim

Defendant Cohen contends that as a mere salesman for M&M, he was not involved in the billing process and, therefore, did not submit any false claim to the United States.  According to defendant Cohen, the contract was between Tim Muldoon of M&M and Honeywell.  Pursuant to 18 U.S.C. § 2(a), a person who aids or abets another in committing a crime against the United States is punishable as a principal.  "This statute does not create a separate crime; instead, it makes the listed actions a primary violation of another, specific crime."  United States v. Simpson, 979 F.2d

7

1282, 1285 (8th Cir. 1992), cert. denied, 507 U.S. 943 (1993). Therefore, under section 2(a), the acts of the principal become those of the aider and abettor as a matter of law. Id.

The indictment here alleges that defendant Cohen participated in the falsification of documents which supported the false claim later submitted to the United States via Honeywell. The indictment clearly informs defendant Cohen of the charges against him pursuant to 18 U.S.C. §§ 287 and 2.

B.    Knowledge

Defendant Cohen contends that the indictment is inadequate because it does not allege that defendant Cohen knew that the documents or the claim would be submitted to the United States.

When paired with section 2, 18 U.S.C. § 287 is satisfied when a person presents a false claim to the United States via an intermediary. See United States v. Montoya, 716 F.2d 1340, 1342-43 (10th Cir. 1983); United States v. Beasley, 550 F.2d 261, 272 (5th Cir.), cert. denied, 434 U.S. 863 (1977); United States v. Catena, 500 F.2d 1319, 1323 (3rd Cir.), cert. denied, 419 U.S. 1047 (1974). Knowledge of federal involvement in the transaction is not required. See Montoya, 716 F.2d at 1344-45. It is equally clear that a defendant's knowledge that a federal agency was involved in a matter is not an essential element of a section 1001 charge. See United States v. Suggs, 755 F.2d 1538, 1542 (11th Cir. 1985); United States v. Dose, 2005 WL 106493, *12 (N.D. Iowa Jan. 12, 2005)("The only intent the Government must prove the defendant had was the intent to make the false statement.") Therefore, defendant Cohen's argument is without merit and the indictment is sufficient in this regard.

C.    Materiality

Both parties agree that materiality is an essential element under both sections 287 and 1001.

8

(See Motion to Dismiss at 2-3; Government's Response to Defendant's Motion to Dismiss at 4) Materiality has been alleged in this indictment for each count. (See Indictment, Count One at ¶16 and Count Two at ¶2) Defendant Cohen, however, argues that the false documents and statements provided to Honeywell were not material and were not relied upon by the government.

A false statement is material if it has a natural tendency to influence or is capable of influencing a decision of the decision making body to which it was addressed. See United States v. Robertson, 324 F.3d 1028, 1030 (8th Cir. 2003); United States v. Popow, 821 F.2d 483, 488 (8th Cir. 1987); Blake v. United States, 323 F.2d 245, 246 (8th Cir. 1963). Materiality does not require that the government actually relied on the statement. See Robertson , 324 F.3d at 1030; Blake, 323 F.2d at 247.

Defendant Cohen's contention is a test of the sufficiency of the government's evidence. "[S]o long as the indictment contains a facially sufficient allegation of materiality, federal criminal procedure does not 'provide for a pre-trial determination of sufficiency of the evidence.'" United States v. Ferro, 252 F.3d 964, 968 (8th Cir. 2001), cert. denied, 534 U.S. 1083 (2002)(quoting United States v. Critzer, 951 F.2d 306, 307-08 (11th Cir. 1992)). Defendant Cohen's argument is premature and therefore denied.

### III. CONCLUSION

Based on the foregoing, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying defendant Cohen's Motion to Dismiss (doc. #13).

Counsel are reminded they have ten days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections to same. A failure to file and serve

timely objections shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

<em>/s/ Sarah W. Hays</em>

SARAH W. HAYS
UNITED STATES MAGISTRATE JUDGE

Case 4:05-cr-00424-FJG   Document 31   Filed 08/14/06   Page 10 of 10